Astoria Marine Construction Co. v. Commissioner.
Astoria Marine Constr. Co. v. Commissioner
Docket No. 1868.
United States Tax Court
1945 Tax Ct. Memo LEXIS 275; 4 T.C.M. (CCH) 278; T.C.M. (RIA) 45083; March 9, 1945
Herbert L. Swett, Esq., for the petitioner. Byron M. Coon, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined the following deficiencies for the calendar year 1939: Income tax
$938.40
Declared value excess-profits tax
567.89
The sole question is whether petitioner is entitled to a deduction of $17,169.44 as a loss incurred in the construction of a boat, the "E. Lester Jones." Findings of Fact Petitioner (hereinafter sometimes referred to as Astoria) is an Oregon corporation engaged in the business of building and repairing boats. Its income tax return for the taxable year was filed with the collector of internal revenue for the district of Oregon. It kept its books on an accrual basis. Over a period of many years - "10 to *276 20" - prior to the taxable year petitioner had purchased a special type of lumber from the Creosote Western Company. The lumber had been subjected to a special pressure sealing treatment which forced a chemical into the fiber of the wood, thus stopping deck and dry rot and preserving the wood. C. H. Watzek, was manager of the Creosote Western Company and one of its stockholders. He was a man of considerable means and prior to the taxable year had loaned petitioner $7,000, $6,000 of which remained unpaid in 1939. On August 18, 1938, Astoria submitted a bid to construct a vessel, named the "E. Lester Jones," for the U.S. Coast and Geodetic Survey. It was the successful bidder. The understanding was that if its bid should be accepted it would furnish a bond within a few days. Astoria was in poor financial condition at that time and before the Surety Company would sign the required bond it insisted that additional capital be acquired from some source. Astoria communicated with Watzek and it was agreed between them that he would supply the $20,000; that petitioner would execute promissory notes bearing interest at 6 percent per annum, payable on demand after completion of the vessel; *277 that if Astoria's profit after taxes was $10,000 or less, one-half would be paid to Watzek with the return of the $20,000; that if the profit exceeded $10,000, Watzek was to receive one-third; and that if Watzek's share of the profit amounted to $5,200 the annual interest specified in the notes need not be paid. It was also understood that a portion of Astoria's profit would be applied upon the $7,000 note. In accordance with the requirements of the Surety Company, Watzek deposited $20,000 to the credit of Astoria in a special account in the Astoria branch of the U.S. National Bank of Portiand, Oregon. It was agreed that all labor and supply charges incurred in connection with the execution of the contract would be paid from that account and that all payments received would be deposited to the credit of Astoria in that account only. Pursuant to the agreement, the $20,000 advancement from Watzek to petitioner was evidenced by two promissory notes, in the respective amounts of $10,000 each, one of which was dated September 29, 1938, and the other November 29, 1938. These notes bore interest at 6 percent per annum and were payable upon demand after the completion of the vessel. *278 The transaction was at all times understood by the parties to constitute a loan from Watzek to petitioner, with an absolute liability to pay on the part of petitioner and $20,000 was carried on its books as a note liability. Watzek had nothing to do with the building of the vessel and the entire operation was under the exclusive management and control of petitioner. The actual cost of constructing the "E. Lester Jones" was $22,540.58 over and above the contract price. $17,169.44 of this deficit accrued during the year 1939 and the remaining $5,371.14 in 1940. Upon the completion of the vessel Watzek demanded payment of the two $10,000 notes, and, when advised of petitioner's inability to pay, threatened bankruptcy. After making a careful investigation of petitioner's assets and ascertaining that they consisted of a small plant, which was worthless except as an operating company, and that petitioner was practically insolvent, Watzek, in 1940, agreed to settle the $20,000 liability, as well as the remaining $6,000 liability on the $7,000 note, incurred in connection with a prior transaction, for the sum of $500. In petitioner's income tax return for 1939 it claimed a loss on the *279 construction of the "E. Lester Jones" in the amount of $17,169.44. Shortly before the determination of the deficiency an accountant prepared a "Supplemental Protest," from information furnished by the attorney for petitioner, and filed it with the technical staff of the Bureau of Internal Revenue in connection with negotiations for settlement of petitioner's tax liability for 1940. In this protest it was contended that petitioner and Watzek were partners in the construction of the "E. Lester Jones." Petitioner's attorney later concluded that these contentions were erroneous and so informed the Treasury Department. In the statement attached to the notice of deficiency, the respondent gave the following explanation for the disallowance of the claimed deduction: "(b) There was included in the computation of the net loss on your return a loss in the amount of $17,169.44 on the construction of the vessel 'E. Lester Jones' for the United States Government. You have advanced the contention that a partnership was entered into between Mr. C. H. Watzek and your company for the construction of this vessel; that Mr. Watzek advanced on such enterprise the sum of $20,000.00, and that a loss *280 of more than that amount was sustained in the completion of the contract. It is therefore held that the portion of the loss reflected on your 1939 return is not deductible from your income since it was fully covered by the amount you held to be chargeable to Mr. Watzek's capital investment. Loss disallowed, $17,169.44." Opinion Respondent contends that a borrowerlender relationship did not exist between Astoria and Watzek; that they entered into a joint venture for the building of the "E. Lester Jones," which venture had the characteristics of a partnership as defined and recognized for Federal income tax purposes; and that any loss was sustained by Watzek and not by Astoria. Astoria contends that the loss incurred in building the boat was its loss, not that of Watzek; that the relationship between it and Watzek was that of debtor-creditor; and that there was no partnership or joint venture. We agree with petitioner. From the evidence it appears that Astoria was financially unable to proceed with the government contract for the construction of the boat unless it obtained a $20,000 loan. Watzek, who advanced the required $20,000, insisted that petitioner execute two $10,000 *281 notes, bearing 6 per cent interest, payable on demand upon completion of the vessel. In addition, Astoria was required to agree to give him a percentage of the profits; but if they exceeded a specified amount, the interest was to be cancelled. While it was true as respondent points out on brief, that Watzek, in a letter to Astoria dated August 15, 1938, had stated that he looked upon the contract "as a trial in our partnership," we are convinced that no partnership or joint venture actually existed. Watzek testified that he used the word "partnership" loosely as he dictated this letter in a hurry, and that his only interest in advancing money to Astoria was to make it a better customer for the specially treated lumber sold by his company. He also testified that he did not enter into any partnership with Astoria; that it would have been foolish for him to enter into such a relationship with a company whose finances were of such a doubtful nature; that he knew nothing about boat building; that the performance of the contract was left entirely to Astoria; that he made no attempt to assist or interfere with its performance; that he had no interest or control over the management of the *282 business; and that he did not expect to participate in any loss sustained. When, after the boat was launched, it became evident that a substantial loss had been incurred, Watzek, like any prudent creditor, did his utmost to collect on the notes. He made a formal demand for payment; threatened to institute proceedings in bankruptcy; employed a former county assessor to appraise the value of Astoria's assets; had the tax records checked; tried to sell the notes to Astoria banks and other financial interests; and consulted Dun & Bradstreet and the bank in Astoria. When he received pessimistic reports from all of these sources, one being that Astoria's assets upon a forced sale would not bring an amount in excess of its delinquent taxes, he agreed, in November 1940, to accept $500 in settlement of the entire indebtedness, including the prior indebtedness of $6,000. Considering the acts of Watzek and the treatment accorded the transaction on the books of petitioner we are of the opinion that the parties intended a debtor-creditor relationship. Astoria needed money to be used in its business. Watzek agreed to lend it $20,000 and did so. Astoria agreed to compensate him for the use of *283 the money. He never acquired any interest in the profits as such and never assumed any risk of loss "other than that which every creditor assumes in relying upon the financial responsibility of his debtor." . Most, if not all, of the essentials of a true partnership are entirely lacking. Thus, there was no community of interest in the business, no common control thereof, no sharing of losses, and no sharing of profits except as a measure of compensation. Cf. ; ; . Moreover, there seems to be no sound basis for determining that Watzek and Astoria entered into a joint venture. "An agreement to finance a scheme or operation does not constitute the lender a joint adventurer with the borrower; and this is true even where the profits resulting from the venture *284 were to be divided between the operator and the person advancing the money." ; 30 Am. Jur. 688, sec. 23; . A lender does not "become a joint adventurer by reason of the borrower's agreement to pay him as compensation for advancing the money a share of the profits received, where the lender has no control over or interest in the scheme itself beyond such right to a share of the profits, and does not share in the losses." 30 Am. Jur. 688. The last quotation aptly describes the transaction between Watzek and Astoria. Watzek's right to a share of the profits was a contractual right arising from a loan of money. It constituted a promise to pay additional compensation for the use of the borrowed money in the event profits were realized. It did not, however, have the effect of changing the debtor-creditor relationship. We are not impressed by respondent's remaining contention that the loss of the $20,000 was Watzek's and not Astoria's. Watzek loaned Astoria $20,000. This was deposited to the credit of Astoria in a special account, through which all payments *285 and expenses on the project were to be handled. As heretofore pointed out Watzek had no interest in this project other than that the amount of compensation he would receive for the use of his money would be increased if Astoria realized a profit. He was not liable for any loss sustained. The loss was Astoria's and as a result thereof it was unable to pay its debt to Watzek. The compromise of that indebtedness did not minimize Astoria's loss on the construction of the boat. At the end of 1939 this loss amounted to $17,169.44, and was claimed as a deduction in petitioner's income tax return for that year. Our best judgment is that the respondent erred in disallowing this deduction. Decision will be entered under Rule 50.